OPINION OF THE COURT
Chief Judge Breitel.
These are five separate appeals, each arising out of a third-party personal injury action brought by an injured employee. The State Insurance Fund, as workmen’s compensation lienor, seeks to avoid liability under a statute for its share of the litigation expenses incurred by the employee in recovering his damages from the third party (see L 1975, ch 190, eff June 10, 1975).* In all five cases the Appellate Division held that apportionment between the employee and carrier is required. The carrier appeals.
In each case the employee had been injured, workmen’s compensation benefits ranging from $536.78 to over $19,000 had been collected, and a third-party action had been brought or a lawyer retained before June 10, 1975, the date the statute was enacted and became effective. In all but one case, however, as of that date, no judgment or settlement in the third- *537 party action had been reached. In the France appeal, a verdict was returned in October, 1974, but the judgment, entered on December 16, 1974, was not paid until January, 1976, after affirmance on appeal.
The principal issue is whether the 1975 amendment to section 29 of the Workmen’s Compensation Law, requiring a compensation lienor to contribute to an employee’s expenses in securing a third-party recovery, applies to accidents occurring and actions brought before its enactment. The amendment provides only that it be "effective immediately” (L 1975, ch 190, § 3). If there be retroactivity, the method of computing the lienor’s share of the expenses is also at issue.
 In each of the appeals except France there should be an affirmance. In France, there should be a modification and denial of the employee’s application for apportionment. Both policy and practicality suggest applying the amendment to judgments or settlements reached after June 10, 1975, regardless of when the employee was injured or the third-party action brought. The issue having been left, perhaps deliberately, for judicial resolution, it is appropriate, if not required, that the statute’s reach be determined in accord with the flexibility and social goals of the compensation system. That system allows for upward adjustment of benefits even with respect to prior accidents. Nor do the practical consequences of retroactivity produce inordinate, unusual, or unanticipatable harm to the carrier. The carrier’s financial burden is rarely fixed in amount and fluctuates because of a number of contingencies. With respect to the lienor’s share of the litigation expenses, the amendment explicitly calls for equitable apportionment, and, therefore, rigid formulas are inappropriate. In applying the statute realistically, however, standardized lawyers’ fees in personal injury cases, where such standardization exists, may be recognized, provided equitable factors present are also considered.
Section 29 of the Workmen’s Compensation Law governs the rights and liabilities of employee-claimants and their employers where injury is caused by a third party. Prior to 1937, the employee or his dependents were forced to elect between compensation benefits and a third-party action (see L 1913, ch 816, § 29; Matter of Curtin v City of New York, 287 NY 338, 340). If compensation were chosen, the cause of action against the third party was assigned, by operation of law, to the compensation carrier (see L 1913, ch 816, § 29). If, on the *538 other hand, a third-party action was pursued by the employee, unless the recovery was less than the compensation benefits, the claim to compensation was lost (id.).
With a 1937 amendment, however, the Legislature abolished the forced election, giving the employee or his dependents the right to collect compensation benefits without relinquishing the right to a third-party action (§ 29, subd 1, as amd by L 1937, ch 684). But to avoid a double satisfaction, and continuing the concept that the carrier’s obligation should be diminished when damages are recovered from a third party, the carrier’s lien was introduced (id.; Matter of Curtin v City of New York, 287 NY 338, 342-343, supra). Subject only to "deduction of the reasonable and necessary expenditures, including attorney’s fees, incurred in effecting [the third-party] recovery”, the carrier has a "lien on the proceeds of any recovery” from a third party "to the extent of the total amount of compensation awarded” (§ 29, subd 1). If, however, after a prescribed time period the employee or his dependents fail to pursue the remedy against the third party the employer or his carrier is, as under the earlier statute, subrogated to the claim (id., subd 2). Should the carrier then recover more than the compensation paid plus the expenses incurred, two thirds of that excess must be turned over to the employee or his dependents (id.).
Despite its liberalizing changes the 1937 amendment still proved unsatisfactory. Where an employee recovered from a third party, once the attorney’s lien was satisfied the carrier received the full amount of its lien without contributing to the litigation expenses, including the lawyer’s fees. In short, the carrier benefited from a fund without having shared the burden of creating it. Yet, when the third-party action was brought by the carrier, not only did the carrier’s and attorney’s liens again receive priority over the employee, but the employee received only two thirds of the excess. Also problematic were modest third-party recoveries. Discharge of the lien of the attorney and carrier meant that little of the fund, if any, was left for the employee. (See Recommendation of the Law Revision Commission, McKinney’s 1975 Session Laws of NY, p 1552.)
These inequities prompted widespread criticism, some litigation, and ultimately, legislative correction (see Koutrakos v Long Is. Coll. Hosp., 47 AD2d 500, 506, affd 39 NY2d 1026; Kussack v Ring Constr. Corp., 1 AD2d 634, 635, affd 4 NY2d *539 1011). The Law Revision Commission had repeatedly recommended that the carrier share responsibility for the litigation expenses, including lawyer’s fees, incurred by the employee (see, e.g., Recommendation of the Law Revision Commission, McKinney’s 1975 Session Laws of NY, pp 1551-1554, NY Legis Doc, 1975, No. 65 [F]; McKinney’s 1974 Session Laws of NY, vol 2, pp 1904-1907, NY Legis Doc, 1974, No. 65 [F]; McKinney’s 1971 Session Laws of NY, vol 2, pp 2333-2335, NY Legis Doc, 1971, No. 65 [B]). Eventually, the 1975 statute was enacted. To the provisions of subdivision 1 of section 29 it added: "Should the employee or his dependents secure a recovery from [a third party], whether by judgment, settlement or otherwise, such employee or dependents may apply on notice to such lienor to the court in which the third party action was instituted, or to a court of competent jurisdiction if no action was instituted, for an order apportioning the reasonable and necessary expenditures, including attorneys’ fees, incurred in effecting such recovery. Such expenditures shall be equitably apportioned by the court between the employee or his dependents and the lienor.” (L 1975, ch 190.) Thus, New York joined the increasing number of States favoring apportionment (see Recommendation of the Law Revision Commission, McKinney’s 1975 Session Laws of NY, p 1553; 2A Larson, Workmen’s Compensation Law, § 74.32, esp pp 14-232— 14-233, and n 56 [1976 & 1977 Supp]; Workmen’s Compensation—Tort Suit Expenses, Ann., 74 ALR3d 854, pp 863-866).
With respect to retroactivity, however, the act provided only that it be "effective immediately” (L 1975, ch 190, § 3; see Memorandum of the Law Revision Commission, McKinney’s 1975 Session Laws of NY, p 1551). There is no explanation in the studies accompanying the proposed bills nor did the available proposed bills contain different language (see, e.g., NY Legis Ann, 1975, pp 337-338; Memorandum of the Law Revision Commission, McKinney’s 1975 Session Laws of NY, p 1551; 1973 Assembly Intro No. 1339; 1975 Assembly Intro No. 4116; 1973 Senate Intro No. 1775; 1975 Senate Intro No. 3010).
Viewing the amendment as creating a new set of rights, the State Fund argues that application to pre-June 10, 1975 accident cases would upset the cost-price balance on which it operated and impair its section 29 liens. Also emphasized is the canon of construction that, unless its language clearly indicates to the contrary, an amendment is not to be given retroactive effect. Applicants, on the other hand, also relying, *540 explicitly or in effect, on exegesis from the canons of construction, characterize the amendment as remedial and, disputing the existence of any vested rights, contend that retroactivity is required.
As is often the case the classic canons of statutory construction hardly settle the controversy (Frankfurter, Some Reflections on the Reading of Statutes, 47 Col L Rev 527, 544-545; Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed, 3 Vand L Rev 395, 401-406). True, it is encyclopedic black-letter that amendments are prospective only unless retroactive application is "clearly” spelled out (McKinney’s Cons Laws of NY, Book 1, Statutes, § 52; see 56 NY Jur, Statutes, § 265; 82 CJS Statutes, § 432). It is just as often said that exception is generally made for so-called remedial legislation or statutes dealing with procedural matters (see 2 Sutherland Statutory Construction [4th ed, Sands], § 41.09, pp 280-281; McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 54-55). Numerous cases in this court restate and apply the familiar generalities but in contexts which exemplify their proper and restricted applicability (see, e.g., Matter of Deutsch v Cather-wood, 31 NY2d 487, 489-490; Shielcrawt v Moffett, 294 NY 180, 188 [Lehman, Ch. J.]). Thus, however helpful the maxims when discriminately used, they should not be abused as talismanic (see Shielcrawt v Moffett, 294 NY 180, 189, supra; Matter of Berkovitz v Arbib & Houlberg, 230 NY 261, 270-271 [Cardozo, J.]; Friedman, Law in a Changing Society, p 61; 2 Sutherland Statutory Construction [4th ed, Sands], § 41.05; cf. Matter of Consolidated Mut. Ins. Co. v Keepnews, 41 NY2d 982, 983). Frankfurter put it so well: "Nor can canons of construction save us from the anguish of judgment. Such canons give an air of abstract intellectual compulsion to what is in fact a delicate judgment, concluding a complicated process of balancing subtle and elusive elements” (Frankfurter, supra, 47 Col L Rev 527, 544).
Although, obviously, one might characterize the amendment as remedial, the "remedy” has a direct economic impact on carriers, saddling them with financial obligations not contemplated when prior insurance premiums had been computed. Similarly, calling the legislation procedural is fraught with difficulties, for in its implementation the employee gains the right to what might be a considerable sum. It is thus not the verbal category, be it remedial, nonremedial, substantive, or *541 procedural, into which the amendment might be slotted for lack of more subtle subclassification that sheds light on the issue. It falls comfortably in none. Instead, examination of legislative intent, if it be discernible, recognition of the flexibility of the compensation law in achieving its social goals, and consideration of the practicalities and the realities offer more fruitful and sounder analysis. (See Matter of Berkovitz v Arbib & Houlberg, 230 NY 261, 270-271, supra, for Judge Cardozo’s penetrating discussion.)
As to legislative intent, the direction that the amendment "be effective immediately” evinces a sense of urgency. Yet, the meaning of the phrase is equivocal. Identical language in other acts has not been enough to require application to pending litigation (see Shielcrawt v Moffett, 294 NY 180, 188, 191, supra; Matter of Miller, 110 NY 216, 222-224). Nor, as observed earlier, do the available legislative studies or proposed bills furnish guidance.
It is possible, of course, that the Legislature had views on retroactivity, but failed to express them. Study of the act and its history is inconclusive and, therefore, suggests at least two other possibilities: the gap may be a true one, that is, an unintentional legislative omission; or, elaboration may have been deliberately left to the courts. Whatever the cause, the court has no choice but to determine the retroactive reach of the statute influenced by policy considerations and the practicalities. But, the relative disciplined freedom with which the court may thus approach the issue results directly from the Legislature’s invitation, be it deliberate or inadvertent.
Viewed broadly, the Workmen’s Compensation Law is a method, even a system, for implementing an injured employee’s right to monetary benefits. The allocation of economic benefits and burdens has always been subject to adjustment. More important, the system, designedly, has flexibility, much greater than that found in the more traditional forms of law. Thus, it is not unusual that carriers or employers have had their burdens shifted or increased with relation to past industrial accidents. (See, e.g., Matter of Mlodozeniec v Worthington Corp., 9 AD2d 21, 24, affd 8 NY2d 918, app dsmd 364 US 628; Matter of Schmidt v Wolf Contr. Co., 269 App Div 201, 204-205, affd 295 NY 748; Matter of De Concilus v Juney Jrs., 9 AD2d 17; Matter of Di Martino v Mountain Val. Water Co., 270 App Div 968.)
In context, then, the rights and liabilities set forth in *542 section 29 are part of a larger, intricate system for fixing the economic consequences of industrially caused injury. The amendment at issue, presaged for some years, is just another adjustment in the allocation of the financial benefits and burdens. In an ultimate sense, the amendment neither created a new right nor impaired an existing one, although the reallocation might be characterized verbally either way (cf. Hession v Sari Corp., 283 NY 262, 266 [Loughran, J.], holding the 1937 amendment to section 29 to be "procedural” and applicable to accidents which occurred prior to the effective date of the amending statute). No new action at law is brought. The carrier always benefited from the third-party action; the amendment simply requires it to bear the cost of that benefit.
It should be noted that the carrier has some sort of contingent qualified right once the industrial accident has occurred. That right has been characterized as inchoate, inchoate because it is subject to contingencies and also to fluctuating value depending upon who initiates the tort action, against whom the action is brought, and whether the recovery is subject to allocation based either on comparative negligence or on relative degrees of culpability among joint tort-feasors. Thus viewed it offers no resolution to parse out how much of a "vested” right the compensation carrier has at any given point.
There being different degrees of retroactivity, the extent to which the amendment should be applied to accidents predating June 10, 1975 is another matter. Since the act and its history are inconclusive, it should not be inferred that the amendment was intended to be as retroactive as constitutional limitations would permit. Yet, from the direction that it be effective immediately, it must be inferred that the Legislature was interested in affecting as many cases as practicable. And, because the amendment states that the application for apportionment is to be upon "recovery”, it makes sense that the critical point be the date of judgment or settlement. Hence, the amendment should apply to a judgment or settlement effected after June 10, 1975, even if the injury occurred or the third-party action was brought before that date. On the other hand, to apply the apportionment to prior judgments or settlements, not made in contemplation of apportionment, suggests unfairness and likelihood of disappointed expectations.
*543 Turning to the particular appeals, applicants Becker, Gonzalez, Andrews, and Cole are therefore entitled to an apportionment of their legal expenses. In each case, settlement or judgment followed enactment of the statute. With respect to France, however, because the judgment was entered in 1974 there should be no apportionment.
As to how the lienor’s share of the expenses should be calculated, extended discussion is not required. The statute is explicit: "expenditures shall be equitably apportioned” (§ 29, subd 1). If that were not enough, the Law Revision Commission concluded that an equitable apportionment was more practical and flexible than a rigid statutory formula (see Report of the Law Revision Commission, McKinney’s 1975 Session Laws of NY, p 1553). It does not follow, however, that standardized fees in personal injury cases should be ignored or that, except in the rare case, the lawyer’s fees should be determined on quantum meruit. That would be unrealistic. Instead, so long as the court weighs variable and distinguishing factors, which might suggest departure from the retainer or standardized fees set by local custom or court rule, standardized fees may be used. Such factors might include the reasonableness of the lawyer’s retainer and whether it was improperly influenced by the expectation that the lienor would be sharing in the burden of that fee, the fact that recovery was unusually simple or liability especially clear, and any other equitable circumstances. The practical advantage in limiting or even eliminating hearings on the applications is evident.
 A subsidiary question is the right of the lienor to share in the interest accruing on the recovery. Once judgment or settlement results in recovery the lienor is entitled to interest on its share from the date that interest is computed and collectible on the gross recovery (cf. Candiano v MooreMcCormack Lines, 407 F2d 385, 387, contra; Commissioners of State Ins. Fund v O’Dwyer, 37 AD2d 297, 298-299; see, generally, 2A Larson, Workmen’s Compensation Law, § 74.32, at pp 14-240—14-241). This follows from the proposition that one entitled to a principal sum on which interest is accruing should receive the interest accrued, since interest is intended to compensate for the use or nonpayment of money (see 5 Weinstein-Korn-Miller, NY Civ Prac, par 5003.01; 32 NY Jur, Interest and Usury, §§ 1, 12). Thus, in the France case the *544 lienor is entitled to the judgment interest on its share of the judgment entered December 16, 1974.
The ultimate determination of the equitable apportionment of legal expenses, both for jurisdictional and practical reasons, resides in the courts vested with the powers of fact finding and the exercise of a sound discretion. Only principles involving questions of law would remain subject to review as questions of law. Hence, it will be the unusual case in which review beyond the Appellate Division would be useful or available. (Cohen and Karger, Powers of the New York Court of Appeals [rev ed], §§ 145, 148.)
Accordingly, in the Becker, Andrews, Gonzalez, and Cole appeals there should be an affirmance, with costs, without prejudice to the lienor to apply to the court at nisi prius to reopen the apportionment upon a showing that a rigid formula was improperly followed. In the France appeal, the order of the Appellate Division should be modified, without costs, the application for apportionment and the cross appeal based thereon dismissed, interest awarded to the lienor from the date of judgment in Supreme Court for such portion of the judgment to which the lienor was entitled under its lien, and the matter remitted to Supreme Court for further proceedings in accordance with this opinion.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
In Becker v Huss Co., Gonzalez v Mans, Andrews v Williams and Cole v Roly-Door Sales Co. of Rochester: Order affirmed, with costs, without prejudice to the lienor to apply to the court at nisi prius to reopen the apportionment upon a showing that a rigid formula was improperly followed.
In France v Abstract Tit. Div. of Tit. Guar. Co.: On appeal by the lienor and the third-party defendant: Order modified, without costs, application for apportionment dismissed, and the matter remitted to Supreme Court, Erie County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed. On cross appeal by plaintiff: Cross appeal dismissed, without costs, as academic in view of the determination on the main appeal herein.

 In one of the appeals, Becker v Huss Co., the employer is designated as appellant in the caption and notice of appeal.