OPINION OF THE COURT
Wilmer J. Patlow, J.
Plaintiff seeks an apportionment of attorneys’ fees between herself and the State Insurance Fund which is the workers’ compensation carrier for third-party defendant A. R. Gundry, Inc., employer of Eugene C. Martin, plaintiff’s deceased husband.
The decedent was injured during the course of his employment on July 24, 1978 while on the property of defendant Agway Petroleum Corporation when he fell from a trailer manufactured by defendant Heil Company and owned by third-party defendant A. R. Gundry, Inc., his employer. As a result of the fall, plaintiff’s husband was rendered paraplegic. He subsequently suffered a spastic condition common to paraplegics for which he received certain medications that caused his liver to dysfunction. On January 8, 1981, as a result of the liver problem, he died.
The State Insurance Fund, as the employer’s workers’ compensation carrier, has paid the plaintiff widow a total of $23,040 in workers’ compensation benefits, $109,362.10 in medical benefits and $62,442.63 in death benefits, including funeral expenses, as of the date of this application. Plaintiff is entitled to receive the sum of $171.66 per week in death benefits until she dies. The present value of such future income, as of the time of application, has been fixed at the sum of $87,001.22. The State Insurance Fund has continued to pay this weekly benefit to plaintiff pending the outcome herein.
On July 24, 1987 the parties to this lawsuit entered into a stipulation of settlement whereby the defendants Agway Petroleum Corporation and the Heil Company agreed to pay plaintiff the sum of $600,000 in full satisfaction of all claims. Of this sum, $575,000 was apportioned to decedent’s claim for pain and suffering and $25,000 to the cause of action for wrongful death. This settlement was subsequently approved by the court.
The present application for apportionment was held in abeyance pending the outcome of a subsequent medical mal *629 practice lawsuit which plaintiff instituted against defendants other than the ones involved here. The medical malpractice action had been joined with the personal injury and wrongful death actions for trial, but when the $600,000 settlement was reached the court granted a mistrial in the medical malpractice case. In March 1988, the malpractice action was tried alone before a jury which returned a verdict of no cause for action.
The State Insurance Fund has asserted its lien pursuant to subdivision (1) of section 29 of the Workers’ Compensation Law against the proceeds of the settlement. More specifically, the State Insurance Fund asserts a lien against the $575,000 personal injury settlement in the amount of $132,402.10, representing $23,040 in workers’ compensation and $109,363.10 in medical benefits. Against the $25,000 wrongful death settlement, the State Insurance Fund claims a lien in the amount of $62,442.63, representing the death benefits and funeral expenses paid. The total lien asserted therefore amounts to $194,844.73.
Additionally, pursuant to subdivision (4) of section 29 of the Workers’ Compensation Law, the State Insurance Fund asserts that it is entitled to suspend future payments to the plaintiff widow until her net recovery is exhausted at the compensation rate of $171.66 per week.
During the course of the four-week trial period which preceded the settlement of this lawsuit, extensive negotiations took place. These negotiations were participated in by the State Insurance Fund which consistently sought to collect $50,000 out of its $194,844.73 lien. However, it adamantly refused to go below that amount. Plaintiff declined to pay $50,000 to the State Insurance Fund and has instead elected to apply to the court for a determination of the Fund’s share of litigation costs to be deducted from its lien.
Subdivision (1) of section 29 of the Workers’ Compensation Law provides for a carrier’s lien "on the proceeds of any recovery from such other, whether by judgment, settlement or otherwise, after the deduction of the reasonable and necessary expenditures, including attorney’s fees, incurred in effecting such recovery”. The same paragraph further provides that, upon application to the court, "[s]uch expenditures shall be equitably apportioned by the court between the employee or his dependents and the lienor.”
Plaintiff’s attorneys’ fees in this action equal $200,000 or *630 one third the stipulated settlement, and disbursements expended by plaintiff total $17,696.95. Thus, plaintiff’s full expense amounts to the sum of $217,696.95.
The first issue to be resolved by the court is whether this is a "deficiency” or "nondeficiency” case within the meaning of subdivision (4) of section 29 of the Workers’ Compensation Law. Subdivision (4) of section 29 of the Workers’ Compensation Law provides that the carrier "shall contribute only the deficiency, if any, between the amount of the recovery against such other person actually collected, and the compensation provided or estimated by the chapter for such case.”
The State Insurance Fund strenuously argues that this is a "deficiency” case in that only the proceeds of the settlement of the wrongful death action, and not the action for pain and suffering, may be applied to offset past and future payments of death benefits, including funeral expenses. Consequently, since the $25,000 proceeds of the settlement of the wrongful death action are already insufficient to cover its $62,442.63 lien, the State Insurance Fund is obligated to pay the deficiency in future death payments otherwise due the plaintiff.
The significance for the State Insurance Fund is that to the extent it remains obligated for the deficiency, it cannot be said to have benefited from the settlement, and therefore cannot be expected to contribute to the costs incurred in securing it. The State Insurance Fund insists that the allocation of the settlement proceeds between the two causes of action was done without its consent and to its detriment and therefore relieves it proportionately from having to share in the burden of litigation costs.
In contrast, plaintiff takes the position that this is a "nondeficiency” case in that the carrier’s obligation to pay future benefits must be compared to the total settlement figure for both the pain and suffering and wrongful death cases as diminished by the carrier’s entire lien and attorney’s fees and disbursements. Thus, according to plaintiff, the total settlement amount of $600,000, less fees and disbursements of $217,696.95, and less the entire lien of $194,844.73 for all of the carrier’s past payments, including funeral expenses, yields a sum of $187,458.32 which is available and exceeds the expected value of the future death benefits.
In plaintiff’s view, therefore, the State Insurance Fund is relieved of its obligation to pay any deficiency and is benefited to the extent, not only of its entire $194,884.73 lien, but also *631 the $87,001.22 value of the future payments fixed as of the time of this application.
In support of plaintiffs position, her attorney refers to subdivision (1) of section 29 of the Workers’ Compensation Law, particularly language which grants the carrier "a lien on the proceeds of any recovery from such other, whether by judgment, settlement or otherwise, after the deduction of the reasonable and necessary expenditures, including attorney’s fees, incurred in effecting such recovery, to the extent of the total amount of compensation awarded under or provided or estimated by this chapter for such case and the expenses for medical treatment paid or to be paid by it” (emphasis added).
To further amplify the context of the above quotation, "recovery” refers to the proceeds of remedies pursued where an employee is "injured or killed by the negligence or wrong of another not in the same employ” (Workers’ Compensation Law § 29 [1]; emphasis added) and "compensation” is defined as "the money allowance payable to an employee or to his dependents as provided for in this chapter, and includes funeral benefits provided therein” (Workers’ Compensation Law § 2 [6]; emphasis added). Additionally, the court takes "this chapter” to mean chapter 67 of the Consolidated Laws which encompasses the various articles under which different types of benefits are authorized (see, Workers’ Compensation Law § 1 [a], which states that "[t]his chapter shall be known as the 'workers’ compensation law’ ”).
Considering the over-all sense of the statutory provisions, the court concludes that the totality of the liens claimed by the State Insurance Fund attach in a single sum to the entirety of the proceeds of the causes of action for both pain and suffering and for wrongful death. Thus the court considers this a "nondeficiency” case in that the proceeds of $600,000, less $217,696.95 in attorney’s fees and disbursements, are sufficient to fully satisfy $194,844.13 in liens of the State Insurance Fund and still cover the $87,001.22 present value of future death benefits, thereby relieving the State Insurance Fund of this responsibility.
Inasmuch as the State Insurance Fund has mistakenly continued to pay plaintiff’s weekly death benefits, it is entitled to recoup overpayments made after the point in time when the present value of future death benefits was fixed at $87,001.22.
The court will now consider the appropriate equitable ap *632 portionment of attorney’s fees and disbursements to be made in this case.
In Matter of Kelly v State Ins. Fund (60 NY2d 131, 136), cited by both parties, the New York Court of Appeals upheld an apportionment where "[t]he carrier’s equitable share of the litigation costs was held to be a pro rata share of the total amount of the recovery inuring to the benefit of the carrier.”
This court finds the following calculations to be an accurate translation of the above-quoted verbal formulation to mathematical terms.
The benefit derived by the State Insurance Fund equals the sum of its total lien for past payments expended ($194,844.73) plus the present value of the future payments from which it has been freed ($87,001.22). This sum equals $281,845.95.
The benefit accruing to the plaintiff is the balance, or the difference between the total settlement figure ($600,000) and the benefit derived by the State Insurance Fund ($281,845.95), which diminishes that of plaintiff. The total benefit to plaintiff thus equals the sum of $318,154.05.
Thus, of the total settlement recovery of $600,000, the State Insurance Fund has benefited in the amount of $281,845.95 or 47% whereas the plaintiff has benefited to the extent of $318,154.05 or 53%. The court therefore considers the State Insurance Fund’s pro rata share of the benefit received to be 47% and the plaintiff’s pro rata share to be 53%. Consequently, the attorney’s fees and disbursements expended should be shared in the same proportion as the benefit derived.
Inasmuch as the entire expenditure for attorney’s fees and disbursements amounted to $217,696.57, the court calculates the State Insurance Fund’s pro rata portion to be 47% thereof, or $102,317.39. The pro rata share of litigation costs for which plaintiff is responsible is the sum of $115,379.19 or 53%. This calculation has the advantage of apportioning and thereby accounting for the entire expense incurred in securing the settlement.
By subtracting the State Insurance Fund’s proportionate burden of the litigation costs ($102,317.39) from its outstanding lien ($194,844.73) the court concludes that the sum of $92,527.34 would be due the State Insurance Fund from the settlement if the court considers the apportionment from a strictly mathematical point of view.
However, it is clear that the method of computation ap *633 proved in Kelly (supra) is not "a rigid formula to be used in all cases” (Wood v Firestone Tire & Rubber Co., 123 Misc 2d 812, 819).
The New York Court of Appeals in Kelly (supra) has explained the nature of the equities to be considered as follows:
"Prior to the amendment of section 29, an insured employee who recovered against a third party an amount greater than his or her statutory entitlement to compensation bore the entire costs of litigation and paid the lien amount out of the remaining recovery proceeds * * *. As a result, carriers reaped significant benefits at a claimant’s expense. The Law Revision Commission, advocating change in the law, noted that 'when the excess is modest or non-existent, the employee, who has gone to the trouble and expended the time required to make the lawsuit a success, finds that after his own lawyer’s and the carrier’s liens have been paid off, there is little or no net recovery left for him’ * * *.
"The impetus for amending the law to provide for allocation of litigation costs between the employee and the carrier, therefore, was the desire to stem the inequity to the claimant, arising when a carrier benefits from an employee’s recovery while assuming none of the costs incurred in obtaining the recovery, and to ensure that the claimant receives a full measure of the recovery proceeds in excess of the amount of statutory benefits otherwise due the claimant. It was determined that these interests would be most effectively served by equitably apportioning litigation costs. This concept was purposely adopted to avoid 'rigid statutory formulas’ and to implement a 'practical and flexible’ approach towards ensuring that a compensation carrier assumes its fair share of the costs of litigation” (Matter of Kelly v State Ins. Fund, 60 NY2d 131, 137-138, supra).
Appropriate equitable considerations are also discussed by the New York Court of Appeals in the following manner: "As to how the lienor’s share of expenses should be calculated, extended discussion is not required. The statute is explicit: 'expenditures shall be equitably apportioned’ (§ 29, subd 1). If that were not enough, the Law Review Commission concluded that an equitable apportionment was more practical and flexible than a rigid statutory formula (see Report of the Law Review Commission, McKinney’s 1975 Session Laws of NY, p 1553). It does not follow, however, that standardized fees in personal injury cases should be ignored or that, except in the *634 rare case, the lawyer’s fees should be determined on quantum meruit. That would be unrealistic. Instead, so long as the court weighs variable and distinguishing factors, which might suggest departure from the retainer or standardized fees set by local custom or court rule, standardized fees may be used. Such factors might include the reasonableness of the lawyer’s retainer and whether it was improperly influenced by the expectation that the lienor would be sharing in the burden of that fee, the fact that recovery was unusually simple or liability especially clear, and any other equitable circumstances.” (Becker v Huss Co., 43 NY2d 527, 543.)
In the case at bar there are certain equitable factors which the court deems appropriate to consider.
To begin with, plaintiff’s recovery was not "unusually simple”, nor was "liability especially clear” (see, Becker v Huss Co., supra). Indeed, the opposite was true. This action was commenced in 1978 and pursued through numerous depositions, two interlocutory appeals, one of which affirmed the denial of summary judgment to defendant Heil Company (which ultimately contributed to the settlement) and extensive trial preparations. The case was not compromised until a jury had been picked, which took two weeks, and an additional two weeks of trial had been held. From this viewpoint alone, the $200,000 counsel fee in all probability does not accurately reflect the true cost of pursuing plaintiffs recovery.
This is especially so in light of the companion medical malpractice suit initiated by plaintiff against the decedent’s physicians and hospital after his death in 1981. That action, which resulted in a jury which returned a verdict of "no cause for action”, involved extensive pretrial preparations, and a lengthly trial, for which plaintiffs counsel was entirely uncompensated.
The significance of this companion case for the apportionment here is that plaintiff took the entire risk of pursuing a remedy which, if successful, would have secured an additional source of funds to which the lien of the State Insurance Fund would have attached. It does not appear inequitable to readjust the proportionate burden of litigation costs to give credit to plaintiff for her efforts in connection with this companion action.
Additionally, the court wishes to consider the role the State *635 Insurance Fund played during the course of the settlement negotiations which ultimately led to the $600,000 compromise. For purposes of this lawsuit the State Insurance Fund acted as both the workers’ compensation carrier and the liability carrier for the decedent’s employer, third-party defendant A. R. Gundry, Inc. Although the New York Court of Appeals has indicated that the "second hat” of the workers’ compensation carrier is "irrelevant to determining the benefit it receives from an employee’s recovery in a third-party action” (Matter of Kelly v State Ins. Fund, 60 NY2d 131, 141, supra; emphasis added), on the facts of this case the State Insurance Fund directly affected plaintiff’s benefit by making no monetary contribution at all to the settlement. As a practical matter, since the workers’ compensation lien and future obligations were already satisfied by the $600,000 offered in settlement by the defendants Agway Petroleum Corp. and the Heil Company, the refusal of the State Insurance Fund as liability carrier to contribute to the settlement inured primarily to the detriment of plaintiff. Thus, although the plaintiff furthered the interests of the State Insurance Fund by securing a recovery which fully satisfied its past and future obligations, the State Insurance Fund in turn used its position as liability carrier to frustrate the interests of plaintiff.
The benefit the State Insurance Fund derived for itself was considerable, consisting of relief from exposure on the third-party claims against the employer, where credible ground for liability existed and damages were potentially enormous. Simultaneously the detriment to plaintiff was significant in that the settlement figure arrived at without contribution from the State Insurance Fund could be said to have been comparatively low, given the severity of the injuries sustained.
The court concludes on the facts of this case that a purely mathematical calculation will not ensure that the workers’ compensation carrier assumes its fair share of the real costs of litigation, nor will it enable the plaintiff to receive the full and fair measure of recovery proceeds in excess of the statutory benefits to which she is otherwise entitled.
Therefore, taking into account the equitable considerations outlined above, the court in its discretion determines that the lien of the State Insurance Fund, already reduced mathematically to the sum of $92,527.34, shall be equitably reduced further in its entirety.
*636 Such reduction is contingent upon plaintiffs return of the death benefits inadvertently paid by the State Insurance Fund since the date of plaintiffs application when past death benefits were fixed at $62,442.53 and the value of future death benefits at $87,001.22.