**Emmett L. TURNER, Plaintiff–Appellant,**

v.

**CITY OF BUFFALO, Defendant,**

**Niagara Frontier Transportation Authority, Defendant–Appellee,**

**Hartford Accident and Indemnity Company, Alleged Lienor–Appellee.**

**No. 296, Docket 94–7280.**

United States Court of Appeals, Second Circuit.

Argued Sept. 27, 1994.

Decided Nov. 23, 1994.

Richard Weissfeld, Buffalo, NY, for plaintiff-appellant Emmett L. Turner.

Frank G. Godson, Buffalo, NY, for alleged lienor-appellee Hartford Acc. and Indem. Co.

Before WINTER, JACOBS and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

Appellant Emmett L. Turner was severely injured in the course of employment while working on a boat operated by his employer, Niagara Frontier Transportation Authority ("NFTA") and owned by the City of Buffalo (the "City"). NFTA's compensation insurance carrier, Hartford Accident & Indemnity Company ("Hartford") immediately began paying Turner worker's compensation benefits even as Turner's federal claims for negligence and unseaworthiness under general maritime law and the Jones Act, 46 App. U.S.C. § 688, remained pending. Thereafter, Turner settled with NFTA and the City for $5.6 million, most of which was also payable by Hartford in its capacity as NFTA's liability carrier.

In the action in the United States District Court for the Western District of New York (John T. Curtin, *Judge* ), the parties did not dispute that the New York Workers' Compensation Act gave Hartford, as the compensation carrier, a lien against its obligation as liability carrier to recover the worker's compensation payments already disbursed. At issue was whether the relevant statute gave Turner the right to offset attorney's fees and other costs against the lien. The district court denied Turner's motion for equitable apportionment of the lien. *See Turner v. Niagara Frontier Transp. Auth.*, 843 F.Supp. 847, 850 (W.D.N.Y.1994). We hold that there was no lien to begin with, and thus we affirm.

## I

Turner was working aboard a boat in the scope of his employment with NFTA on June 3, 1986, when he tripped over a rope and fell into an open hatch. The injuries Turner suffered were so severe that he was rendered a quadriplegic. The boat on which the accident occurred was owned by the City, but chartered by NFTA.

Following the accident Turner applied for state worker's compensation benefits and also sued both NFTA and the City, alleging negligence and unseaworthiness under general maritime law and the Jones Act, 46 App.U.S.C. § 688. *See Turner v. Niagara Frontier Transp. Auth.*, 748 F.Supp. 80 (W.D.N.Y.1990). During the period in which the lawsuit remained unresolved, Turner collected a total of $1,590,444.40 in worker's compensation payments.

On October 30, 1992, the parties signed a settlement agreement whereby NFTA and the City agreed to pay Turner $5.4 million and $150,000, respectively, in exchange for Turner's releases. *See Turner*, 843 F.Supp. at 850. Under the terms of the agreement, approximately $1.9 million of the total amount was earmarked for Turner's attorney's fees. The parties apparently did not dispute the premise that § 29(1) of New York Workers' Compensation Law (McKinney 1993) ("WCL") would give Hartford a lien to recover its worker's compensation payments from its liability obligation, provided that the WCL had mandated those payments. Such a lien would have entitled Hartford to deduct from the $5.4 million payable to Turner in liability benefits the $1.6 million already disbursed in compensation payments. As part of the settlement, Hartford agreed to deduct only two-thirds of the amount already paid in worker's compensation, thus reducing the putative lien to approximately $1.06 million.

Turner filed a motion to extract from the alleged lien attorney's fees—attorney's fees on top of the $1.9 million already contemplated by the settlement agreement. In support of his motion, Turner argued that the worker's compensation statute gave him a right to apply for

> an order apportioning the reasonable and necessary expenditures, including attorney's fees incurred in effecting such recovery. Such expenditures shall be equitably apportioned between the employee or his dependents and the lienor.

WCL § 29(1). Hartford opposed appellant's application for apportionment of its attorney's fees from the lien, countering that (1) the settlement was under maritime law, thus foreclosing jurisdiction under New York worker's compensation law, and (2) the apportionment provision of § 29(1) applied only to settlements resulting from third-party actions, not those in which the settlor was plaintiff's employer.

Pending a judicial resolution of the dispute over apportionment, the parties placed in escrow more than $1 million—the value of the putative WCL § 29(1) lien. On February 7, 1994, Judge Curtin entered an order denying appellant's application for equitable apportionment of the putative lien, holding that WCL § 29(1) only applied to settlements involving third-party tortfeasors, not those in which the primary settlor was the employer. *See Turner,* 843 F.Supp. at 850–51. From this order Turner appeals.

## II

### A

■ Section 29(1) of the Workers' Compensation Law provides, in pertinent part:

If an employee entitled to compensation under this chapter be injured or killed by the negligence or wrong of *another not in the same employ,* such injured employee ... need not elect whether to take compensation and medical benefits under this chapter or to pursue his remedy against *such other* but may take such compensation and medical benefits and ... pursue his remedy against such other subject to the provisions of this chapter.... In such case, the ... [insurer] liable for the payment of such compensation ... shall have a lien on the proceeds of any recovery from *such other,* whether by judgment, settlement or otherwise, after the deduction of the reasonable and necessary expenditures, including attorney's fees, incurred in effecting such recovery.... Should the employee or his dependents secure a recovery from *such other,* whether by judgment, settlement or otherwise, such employee or dependents may apply on notice to such lienor to the court in which the third party action was instituted, or to a court of competent jurisdiction if no action was instituted, for an order apportioning the reasonable and necessary expenditures, including attorneys' fees, incurred in effecting such recovery. Such expenditures shall be equitably apportioned by the court between the employee or his dependents and the lienor.

(Emphasis added). The purpose of the lien provision is to allow injured employees to collect workers' compensation benefits immediately after the injury, while at the same time providing a mechanism for averting double recovery in the event of a subsequent recovery from a third-party tortfeasor. *See Kelly v. State Ins. Fund,* 60 N.Y.2d 131, 468 N.Y.S.2d 850, 853, 456 N.E.2d 791, 794 (1983).

Judge Curtin's thoughtful opinion does suggest that Hartford may not have had a lien at all under WCL § 29(1). *See* 843 F.Supp. at 850. The district court, however, focused primarily on the applicability of § 29(1)'s apportionment requirement. *Id.* We believe that the proper threshold question is whether, assuming *arguendo* that Turner's claim was governed by the WCL, a lien could have existed at all under § 29(1). The resolution of that question may be determinative of whether Turner had any arguable claim to apportionment.

The statute employs parallel language in the lien and apportionment provisions: both refer to the third-party tortfeasor as "such other," as indicated by the italicized portions of the statutory excerpt above. Thus, we believe that those provisions march sword and step. If there is no lien, there of course cannot be apportionment. If a lien does exist, it follows that the lien may be apportioned. We believe that the apportionment clause cannot be considered alone without reference to the question of whether a lien exists in the first place. Thus, we direct our attention to the threshold question of whether a lien could have existed.

### B

■ It is undisputed that § 29(1) applies only to recoveries against third-party tortfea-

sors, not to those against employers. *See Simmons v. St. Lawrence County CDP, Inc.*, 147 A.D.2d 323, 543 N.Y.S.2d 185, 186 (3d Dep't 1989); *Smith v. Spinoccia*, 119 A.D.2d 660, 501 N.Y.S.2d 99, 100 (2d Dep't 1986). Hence, the applicability of § 29(1) to the case at bar boils down to the single question of whether a third-party's comparatively minor participation in a settlement—in this case, the City's $150,000 contribution, against $5.4 million for NFTA—is sufficient to trigger § 29(1) with respect to the employer. Indeed, at oral argument counsel for Turner conceded that no § 29(1) lien would have existed had the settlement at issue involved only Turner and NFTA. This statement was tantamount to an admission that Turner's § 29(1) argument rested entirely on the premise that the City's three-percent contribution to the settlement was sufficient to permit a characterization of the entire settlement as a "third-party action" within the meaning of that statute.

We disagree with this premise on the facts before us, and thus we conclude that there was no § 29(1) lien to begin with. Inasmuch as § 29(1) explicitly limits its application to those "not in the same employ," the statute articulates a clear intent to exclude employers.[1] Nowhere does the statute suggest that an employer's contribution to a settlement can be swept into the lien merely because a third-party tortfeasor has contributed to that settlement.[2] Indeed, we find nothing in the text of § 29(1) that supports appellant's argument that a lien under § 29(1) applies against the entire aggregate *recovery*, rather

than against individual *parties*. Because the statute states that the workers' compensation insurer "shall have a lien on the proceeds of any recovery from [the third-party tortfeasor]," Hartford might have a § 29(1) lien with respect to the City only. Thus, to the extent that appellant has any claim to equitable apportionment of a § 29(1) lien, the base amount of the lien is limited to the City's $150,000 contribution to the settlement.

■■■ We find, however, that appellant would not be entitled to apportionment—even with respect to the City's contribution. The statute in question stipulates that apportionment is available for "reasonable and necessary expenditures, including attorney's fees, incurred in effecting [the] recovery." Nothing in the record indicates that Hartford has suggested, much less sought to exercise, such a lien against the City. If Hartford had presented such a claim, the district court would have been called upon to decide whether or not Turner had an offset for "reasonable and necessary expenditures, including attorney's fees, incurred in effecting [the] recovery." Here, the result achieved and the comparative role played by each defendant in the tort strongly suggest that the City was peripheral to Turner's litigation effort and that only a small incremental expenditure was "necessary" to extract the additional $150,000 payment from the City under this settlement. Hence, we hold that no lien could have existed under § 29(1), from which it necessarily follows that appellant has no claim to equitable apportionment.[3]

---

1. Inasmuch as New York state courts have repeatedly stated that § 29(1) was intended "to avoid 'rigid statutory formulas' and to implement a 'practical and flexible' approach toward[] ensuring that a compensation carrier assumes its fair share of the costs of litigation," *Kelly v. State Ins. Fund*, 60 N.Y.2d 131, 468 N.Y.S.2d 850, 852, 456 N.E.2d 791, 793 (1983), we believe that it is appropriate to appraise the applicability of § 29(1) in light of its manifest legislative purpose. *See id.* 468 N.Y.S.2d at 853–54, 456 N.E.2d at 794–95; *United States Fidelity & Guaranty Co. v. 38 E. 29 St., Inc.*, 111 Misc.2d 672, 444 N.Y.S.2d 505, 507 (Sup.Ct.N.Y.County 1981); *cf. Ianielli v. North River Ins. Co.*, 119 A.D.2d 317, 506 N.Y.S.2d 970, 971 (2d Dep't 1986) (resolving question of allocation under legislative amendment to § 29(1) by testing proposed allocation formula against the amendment's purpose).

2. Indeed, if the City's participation were deemed to cast the entire settlement as a "third-party settlement," the issue would turn on the purely formal circumstance that the two defendants recorded their settlement in the same document at the same time. Similarly, the proportion of the City's contribution to the settlement should not affect whether or not the employer's contributions are subject to a lien created by WCL § 29(1).

3. We note that even if we had found that a § 29(1) lien did, in fact, exist, we would still affirm the judgment of the district court. When the threshold requirements for a § 29(1) lien are met, the equitable apportionment of litigation expenses are discretionary, and the court's exercise of that discretion "will not be disturbed on appeal absent a showing of abuse." *Smith v.*

### III

■ Our conclusion that no lien existed brings us to our final question, which the district court had no occasion to address. This question pertains to the proper *distribution* of the $1.06 million held, under the terms of the settlement, in escrow pending the outcome of Turner's application for attorney's fees from the lien. *See* J.A. at 42a. In the absence of a statutory lien, Hartford must ground its claim to a return of the compensation payments elsewhere. *See Palma v. Ben Cal Assocs.*, 161 A.D.2d 567, 555 N.Y.S.2d 143, 145 (2d Dep't 1990) ("Insofar as workers' compensation is a creature of statute, whatever rights the respective parties have thereunder must be found therein."). To this end, Hartford relies on a 1968 case in which the New York Court of Appeals stated, in *dicta*, that if a plaintiff first collected workers' compensation payments but later prevailed in a case asserted under the general maritime law, "the result would merely be to subject [the plaintiff's] recovery to a setoff to the extent of compensation payments already made." *Dacus v. Spin-Nes Realty & Constr. Co.*, 22 N.Y.2d 427, 293 N.Y.S.2d 83, 87 n. 3, 239 N.E.2d 718, 721 n. 3 (1968).

We need not decide whether this statement—in which the court was speaking only hypothetically—constitutes settled law, for we believe that claims to the escrowed funds are resolved by the language of the escrow agreement. Under the terms of this agreement, appellant was to return two-thirds of the already-paid workers' compensation payments to Hartford—without any concession by Hartford that it was required to pay these monies under the WCL in the first place. *See* Escrow Agreement with Respect to Alleged Workers' Compensation Lien and Claim for Attorney's Fees, *in* J.A. at 42a, 43a (stating that the return of two-thirds of the payments "will constitute full reimbursement for Hartford's payments to [appellant] without Hartford ... conceding in any way that said payments to [appellant] constituted payments required by the Workers' Compensa-

tion Law"). Why Turner's attorneys agreed to return compensation payments already disbursed without a concession by Hartford that § 29(1) and other provisions of the WCL applied—if they truly believed that Hartford had no other basis to compel a refund of the payments—is a question we need not reach. Absent a lien and an entitlement to apportionment, Turner has no claim to the $1.06 million in escrow.

The judgment of the district court is affirmed.

---

*Spinoccia*, 119 A.D.2d 660, 501 N.Y.S.2d 99, 100 (2d Dep't 1986); *see also Becker v. Huss Co.*, 43 N.Y.S.2d 527, 402 N.Y.S.2d 980, 986, 373 N.E.2d 1205, 1211 (1978). We believe that Judge Curtin

did not abuse his discretion with respect to this question, particularly in light of his careful reasoning that the settlement had already provided for generous attorney's fees for Turner.