**1256 HERTEL AVENUE ASSOCIATES, LLC, Appellant,**

v.

**Tanya R. CALLOWAY, Appellee.**

**No. 10–CV–250S.**

United States District Court, W.D. New York.

Signed March 15, 2012.

Filed March 16, 2012.

**372**

Edward Crossmore, Ithaca, NY, for Appellant.

Diane M. Ciurczak, Law Office of Diane Ciurczak, Buffalo, NY, for Appellee.

## DECISION AND ORDER

WILLIAM M. SKRETNY, Chief Judge.

### I. INTRODUCTION

Appellant, 1256 Hertel Avenue Associates, LLC ("1256 Hertel"), seeks to reverse the Order of the Honorable Carl L. Bucki, Chief Bankruptcy Judge of the Western District of New York, which granted Tanya Calloway's motion to avoid a judgment lien against her homestead. Although Calloway has not submitted a brief, for the following reasons, Chief Judge Bucki's Order is affirmed.

### II. BACKGROUND

In July of 2003, Hertel secured a judgment lien against Calloway's residential property, or "homestead," located at 118 Homer Avenue in Buffalo, New York.[1] (Ciurczak Affidavit, ¶¶ 5–5(b), attached as ex-

---

**1.** Progressive Northern Insurance Co. also secured a judgment lien against Calloway's homestead. However, it did not object to Calloway's motion seeking to avoid the liens, nor did it appeal the Bankruptcy Court's decision.

hibit to Notice of Appeal; Docket No. 1–10.)

Five years later on May 12, 2009, before that judgment was perfected, Calloway filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code. (*Id.,* ¶ 2.) As part of that proceeding, in July of 2009, Calloway moved the Bankruptcy Court to cancel all judgment liens against her homestead. (*Id.,* "wherefore" clause.) In adjudicating that motion, Chief Judge Bucki found that, under New York's Civil Procedure Law and Rules ("CPLR") § 5206, Calloway was entitled to a $50,000 homestead exemption and, because the equity in her property was less than that amount, granted Calloway's motion in full. (Decision and Order, p. 5; attached as exhibit to Notice of Appeal; Docket No. 1–3.)

This appeal followed.

## III. DISCUSSION

### A. Standard of Review

■ Under its appellate jurisdiction, this Court conducts a *de novo* review of the law. *In re Porges,* 44 F.3d 159, 162 (2d Cir.1995); *Teufel v. Schlant,* No. 02–CV–81 S, 2002 WL 33008689, at *4 (W.D.N.Y. Sept. 25, 2002). The facts, which would be reviewed for clear error, are undisputed. *See In re Alper Holdings USA, Inc.,* 398 B.R. 736, 747 (S.D.N.Y. 2008).

### B. Homestead Exemption

11 U.S.C. § 522(f) provides that "[n]otwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is (1) a judicial lien." *See In re*

*Giordano,* 177 B.R. 451, 454 (Bankr. E.D.N.Y.1995).

As authorized by § 522(b)(2) of the Bankruptcy Code, New York has opted out of the federal exemption scheme and provided its own set of permissible exemptions for debtors domiciled in the state. *Dubroff v. First Nat'l Bank of Glens Falls (In re Dubroff),* 119 F.3d 75, 76–77 (2d Cir.1997); *In re Nudo,* 147 B.R. 68, 70 (Bankr.N.D.N.Y.1992). New York Debtor and Creditor Law § 282 identifies the homestead exemption in CPLR § 5206(a) as a permissible bankruptcy exemption. § 5206(a) currently provides in pertinent part:

> Property [consisting of a lot with a dwelling, shares of stocks, apartment or a mobile home] not exceeding ... seventy-five thousand dollar ... in value above liens and encumbrances, owned and occupied as a principal residence, is exempt from application to the satisfaction of a money judgment.

(McKinney 2011).

However, in 2003, at the time that 1256 Hertel secured its lien, the homestead exception was limited to $10,000. As evidenced above, by 2011 the exemption was raised to $75,000. But, at issue here is the August of 2005 amendment, which raised the exemption to $50,000. 1256 Hertel argues that the 2005 amendment does not have retroactive effect, and, if it does, it violates the Takings Clause of the United States Constitution. *See* U.S. Const. amend. V. If 1256 Hertel is correct on either of these fronts, Calloway could only claim the $10,000 exemption and could not totally avoid 1256 Hertel's judgment lien as she has under the 2005 status of the exemption.

### 1. Retroactivity

■ The Bankruptcy Court found that the 2005 amendment applied to all obli-

gations, even those that were reduced to judgment before the amendment was passed. 1256 Hertel argues that the "anti-retroactivity rule," which presumes that any legislative act applies only prospectively unless otherwise indicated, should apply and that Calloway should be bound by the exemption as it stood when 1256 Hertel secured its lien.

As noted by the Bankruptcy Court, the Second Circuit has already determined that this statute does have retroactive effect. In *CFCU Community Credit Union v. Hayward*, the court noted that "retroactive operation is not favored by New York courts" but ultimately concluded that "[i]n light of the legislative finding that the increased exemption amount was long overdue and that the old amount was unrealistic in today's economy, it would defeat the intent of the Legislature to judicially engraft an anti-retroactivity provision ... onto the statute where none exists." 552 F.3d 253, 262–65 (2d Cir.2009).

1256 Hertel argues that a different rule of retroactivity should apply in this case because the court limited its finding to non-secured debts. Indeed, the *Hayward* court characterizes its rule this way: "[A] New York debtor's ability to invoke the increased homestead exemption is determined not by the date the debtor's *unsecured contract debt* was incurred, but rather, by the date upon which the debtor files his or her bankruptcy petition." 552 F.3d at 265 (emphasis added). The court further noted: "We reiterate that we are only asked to determine if contract-based debts that have not been reduced to judgment prior to the effective date of the Amendment are subject to the increased exemp-

tion amount." *Id.* at 265 n. 12. Thus, 1256 Hertel argues that because it has secured its debt, this case is distinguishable from the rule announced in *Hayward*, and the 2005 amendment should not apply to Calloway.[2]

1256 Hertel argues that *United States v. Security Industrial Bank* compels this result. 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982). There the Court declined to extend the 1978 Bankruptcy Act to pre-existing liens because of the "difficult and sensitive questions arising out of the guarantees of the takings clause." *Id.* at 82, 103 S.Ct. 407. But *Security Industrial Bank* case is distinguishable from the case at bar because it did not consider a mere increase in the amount of the exemption, but rather the initial implementation of the exemption by Congress in the first place. *See* Bankruptcy Reform Act of 1978, Pub. L. No. 95–598, 92 Stat. 2549 (1978).

This is an important distinction because when 1256 Hertel secured its judgment, the law subjecting its lien to an exemption was already in place. As noted by the Second Circuit, New York law has provided a homestead exemption since 1850 and the amount of the exemption has periodically increased to reflect changing economic conditions. *Hayward*, 552 F.3d at 260–61. It follows then § 5206 does not implicate "difficult and sensitive questions arising out of the takings clause" because "[t]he lien was born subject to [Calloway's] right to avoid it" and the Homestead exemption was subject to change according to varying economic conditions. *See In re Leicht*, 222 B.R. 670, 683 (1st Cir. BAP

---

**2.** In further support of this contention, it points out that courts have held that a statute should not be construed in a manner that raises a constitutional question if another acceptable construction is possible. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 299–300, 121 S.Ct.

2271, 150 L.Ed.2d 347 (2001). And, it notes that New York courts have applied different degrees of retroactivity to other statutes. *See Becker v. Huss Co.*, 43 N.Y.2d 527, 402 N.Y.S.2d 980, 373 N.E.2d 1205 (1978).

1998). In other words, the alleged taking effected no diminution in 1256 Hertel's rights because its rights were always subject to limitation if Calloway filed for bankruptcy. *See In re Betz,* 273 B.R. 313, 326 (Bankr.D.Mass.2002) ("When [Creditor's] lien arose, he knew or should have known that, in the event of the Debtors' bankruptcy, § 522(f) might impact upon his lien and that the underlying state court exemptions might be adjusted depending upon the date of the filing of the bankruptcy case.").[3]

Under this reasoning, the Second Circuit's recent guidance on this issue, though not directly applicable, still controls. Further, this Court finds that the same principles that guided the *Hayward* court's finding that § 5206 applies retroactively (the remedial effect of the statute and intent of the legislature) apply in equal measure to this case. Therefore, this Court finds that § 5206 does have retroactive effect.

This conclusion accords with that of several other bankruptcy courts throughout the country. *See In re Larson,* 260 B.R. 174, 199 (Bankr.D.Colo.2001) ("Most importantly, unlike the *Security Industrial* case, here, the Colorado legislature did not create a new right for debtors, instead the legislature merely increased a pre-existing exemption"); *In re Bartlett,* 168 B.R. 488, 496 (Bankr.D.N.H.1994) ("Property right attaching to a creditor is subject to the vagaries of the economy which—while it might provide increasing property value of the collateral in question—likewise predictably would produce legislative response to adjust the homestead exemption amount to correspond with such increased property values"); *In re Punke,* 68 B.R. 936, 943 (Bankr.N.D.Iowa 1987) ("At the time the

loans in issue were made, the parties were aware of the provisions of § 522(f) of the Bankruptcy Code [and] [t]he parties were also aware that the legislature adjusted the exemptions from time to time, resulting in a corresponding impact upon the § 522(f) lien avoidance"); *In re Evans,* 362 B.R. 275, 284 (Bankr.D.S.C.2006) (finding "no guarantee or even reasonable expectation that the law in effect at that time and in that place will be applicable in a bankruptcy proceeding"); *In re Brown,* Nos. 06–30199, 06–30872, 2007 WL 2120380, at *16 (Bankr.N.D.N.Y. July 23, 2007) ("At the time that the Credit Union obtained its judgment against Gloss in April 2002, Code § 522(f) was in effect and creditors such as the Credit Union should have been aware of the statute's impact on any judgment lien it might obtain in the context of a bankruptcy case"); *In re McDole,* No. C08–0098RSL, 2008 WL 4330777, at *4 (W.D.Wash. Sept. 18, 2008) ("Accordingly, [Creditor's] alleged property interest was at all times subject to changes in state law. Therefore, the predictable application of Section 522(f) did not constitute a taking.").

### 2. Takings Clause

■ 1256 Hertel next argues that if the statute does apply retroactively, it violates 1256 Hertel's rights under the Takings Clause.

The Takings Clause of the Fifth Amendment provides that no "private property shall be taken for public use, without just compensation." U.S. Const. amend. V. The clause applies to the states through the Fourteenth Amendment. *See Kelo v. New London,* 545 U.S. 469, 125 S.Ct. 2655, 2658 n. 1, 162 L.Ed.2d 439 (2005). The

---

**3.** This issue spills over into the substantive Takings Clause allegation. As discussed below, not only does this finding preclude a prospective-only application of § 5206, it also

strongly suggests, as several bankruptcy courts have found, that no Takings Clause violation occurred.

law recognizes two species of takings: physical takings and regulatory takings. *Buffalo Teachers Fed'n v. Tobe,* 464 F.3d 362, 374 (2d Cir.2006).

The Bankruptcy Court found that "a judgment does not create any vested property interest that the 2005 amendment can impair." (Decision and Order, p. 4.) In making this finding, the Bankruptcy Court relied on *Watson v. New York Central Railroad Co.,* a New an 1872 York Court of Appeals case, which held that "the validity of such laws [affecting judgment creditors] has been fully recognized even where they affected existing claims or judgments. They do not take away property, or affect the obligation of contracts, but simply affect legal judgments." 47 N.Y. 157, 163 (1872).

But much more recently, in *Ford Motor Credit Co. v. N.Y. City Police Department,* the Second Circuit held that "a security interest is indisputably a property interest protected by the Fourteenth Amendment." 503 F.3d 186, 191 (2d Cir.2007). The court went on to note that "[a] secured creditor has two rights: the contractual right to repayment of the debt owed and the property right to the collateral that secures the debt in the event of non-payment." *Id.*

The Supreme Court has also considered the protectable nature of a security interest. As summarized by the Seventh Circuit, "While the [Supreme] Court noted that the 'bundle of rights which accrues to a secured party is obviously smaller than that which accrues to an owner in fee simple,' it clearly viewed that 'bundle' as being sufficiently identified with specific property that it merited the protection of the takings clause even if the simple contractual right of a creditor to be repaid would not." *Peick v. Pension Ben. Guar. Corp.,* 724 F.2d 1247, 1276 (7th Cir.1983) (quoting *Sec. Indus. Bank,* 459 U.S. at 76, 103 S.Ct. 407.)

However, even if 1256 Hertel's security interest is protectable under the Takings Clause, the result of the Bankruptcy Court remains unchanged.

■ If any taking occurred, it would surely be regulatory in nature because § 5206 "does not present the 'classic taking' in which the government directly appropriates private property for its own use." *See Buffalo Teachers,* 464 F.3d at 375 (internal citation and some quotation marks omitted). Rather, there can be little doubt that § 5206 "arises from a public program adjusting the benefits and burdens of economic life to promote the common good." *See id.* (internal citation omitted); *see also Hayward,* 552 F.3d at 264 ("The 2005 Amendment's clear objective was to update the statute to reflect current economic conditions and to once again protect debtors from losing their homes—a goal more likely to be advanced with a $50,000 exemption amount."). As such, courts consider three factors in determining whether the interference with property rises to the level of a regulatory taking: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Buffalo Teachers,* 464 F.3d at 375 (internal citation and quotation marks omitted).

While the first factor arguably weighs in 1256 Hertel's favor, the second and third establish that no taking occurred here. Mirroring the discussion above, § 5206 does not interfere with 1256 Hertel's investment-backed expectations because at the time it secured its lien, it was aware (or should have been aware) that if Calloway later filed for Bankruptcy, its lien would be subject to an exemption that itself was subject to change according to

varying economic conditions. *See In re Punke,* 68 B.R. 936 at 943.

An analogous situation was presented in *Connolly v. Pension Benefit Guaranty Corp.* in the context of ERISA liability. 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986). There the Court ultimately found that "those who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end." *See id.* at 227, 106 S.Ct. 1018 (internal citations and quotation marks omitted). Although not directly applicable, the spirit of that finding suggests that the § 5206 does not interfere with 1256 Hertel's investment-backed expectations because it is plainly a "subsequent amendment" meant to achieve a familiar legislative end.

Finally, and perhaps most importantly, as in *Buffalo Teachers,* the state's action here is "uncharacteristic of a regulatory taking" because "[n]othing is affirmatively taken by the government." *See* 464 F.3d at 375. § 5206 simply expands an exemption already in place and is not an "exploitation by the state." *See id.* While it may be true that the legislature has "taken from Peter to pay Paul, such burden shifting does not, without more, amount to a regulatory taking." *Id.* at 376.

### IV.  CONCLUSION

For the foregoing reasons, this Court affirms the Order of the Bankruptcy Court.

### V.  ORDERS

IT HEREBY IS ORDERED, that the Order of the Bankruptcy Court, Western District of New York, is AFFIRMED.

FURTHER, that the appeal (Docket No. 1) is DENIED and DISMISSED.

FURTHER, that the Clerk of the Court shall take the steps necessary to close this case.

SO ORDERED.