12-1603-bk
*1256 Hertel Avenue Associates v. Calloway*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

―――――――

August Term, 2013

(Submitted: April 29, 2014      Decided: August 1, 2014)

Docket No. 12-1603-bk


1256 HERTEL AVENUE ASSOCIATES, LLC,

*Claimant-Appellant*,

HAROLD P. BULAN,

*Trustee*,

-v.-

TANYA R. CALLOWAY, dba MINIATURE MOMENTS DAYCARE,

*Debtor-Appellee*.


―――――――


Before:
     WESLEY AND DRONEY, *Circuit Judges*, AND BRICCETTI, *District Judge*.*

---

* The Honorable Vincent L. Briccetti, of the United States District Court for the Southern District of New York, sitting by designation.

Appeal from the March 16, 2012 order of the United States District Court for the Western District of New York (Skretny, C.J.) affirming the February 16, 2010 order of the Bankruptcy Court (Bucki, C.U.S.B.J.) holding that the 2005 amendment to N.Y. C.P.L.R. 5206, 2005 N.Y. Laws ch. 623, which increased New York's homestead exemption from $10,000 to $50,000, applied to a judgment lien obtained prior to the amendment's effective date.

EDWARD Y. CROSSMORE, The Crossmore Law Office, Ithaca, NY, *for Claimant-Appellant*.

JOSHUA D. LISTON, Beys Stein Mobargha & Berland LLP, New York, NY, *for Debtor-Appellee*.

WESLEY, *Circuit Judge*:

The New York State Legislature amended N.Y. C.P.L.R. 5206 in August 2005, increasing the state's homestead exemption from $10,000 to $50,000. *See* 2005 N.Y. Laws ch. 623. The homestead exemption entitles New York debtors to exempt their homes "from application to the satisfaction of a money judgment," *id.*, and is also available to debtors in bankruptcy proceedings, *see* N.Y. Debt. & Cred. Law § 282; 11 U.S.C. § 522(b)(3)(A). This appeal requires us to determine whether the 2005 Amendment's increased homestead exemption applies to judgment liens perfected prior to the amendment's effective date and, if so, whether application of the law to pre-enactment judgment liens violates the

2

Takings Clause of the Fifth Amendment. We hold that the 2005 Amendment applies to debts incurred prior to the amendment's effective date and does not violate the Fifth Amendment's Takings Clause.

## BACKGROUND

In July 2003, 1256 Hertel Avenue Associates, LLC ("Hertel") secured a $4,682 judgment lien against Tanya R. Calloway's ("Calloway") home in Buffalo, New York. Hertel docketed the judgment in the Erie County Clerk's office on July 11, 2003. Five years later, another creditor obtained a $5,973 judgment lien against the same property, which it docketed in December 2008. Calloway estimates the current value of her property to be $110,000. The property is encumbered by a mortgage with a remaining balance of approximately $85,000, leaving her around $25,000 in equity.

On May 12, 2009, Calloway filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. In that proceeding, Calloway moved to avoid the judgment liens against her residence pursuant to New York's homestead exemption, N.Y. C.P.L.R. 5206. The exemption protects a debtor's principal residence from being used to satisfy a creditor's judgment up to a statutorily defined maximum value. After standing at $10,000 from 1977 to 2005, *see* 1977

3

N.Y. Laws ch. 181, the homestead exemption limit has been modified twice in recent years: In 2005, New York's Legislature raised the limit to $50,000, 2005 N.Y. Laws ch. 623, and in 2010 the Legislature again modified the exemption, bringing it to its present form, which provides a baseline exemption of $75,000 that is adjusted upward for certain high-property-value counties, *see* 2010 N.Y. Laws ch. 568.

In the bankruptcy court, Hertel acknowledged that Calloway was entitled to claim the homestead exemption, but disputed which version of the exemption should apply: Calloway claimed the $50,000 exemption in effect when she filed for bankruptcy in 2009, while Hertel contended that the bankruptcy court should apply the lower, $10,000 exemption in effect when it perfected its judgment lien in 2003. Specifically, Hertel argued that the 2005 Amendment should be interpreted to apply only to judgment liens perfected after its effective date because retroactive interpretations are disfavored and the amendment did not explicitly provide that it should be applied to pre-existing judgment liens. Further, Hertel also argued that were the amendment interpreted to apply to judgment liens perfected prior to its effective date, this limitation on Hertel's ability to collect on its judgment lien would constitute an unconstitutional taking

4

of its property in violation of the Takings Clause of the Fifth Amendment to the United States Constitution.

The bankruptcy court (Bucki, C.U.S.B.J.) rejected Hertel's contentions and concluded that Calloway was entitled to the $50,000 homestead exemption in effect at the time of her bankruptcy filing. *In re Calloway*, 423 B.R. 627 (Bankr. W.D.N.Y. 2010). In so holding, the bankruptcy court relied on *CFCU Community Credit Union v. Hayward*, 552 F.3d 253 (2d Cir. 2009), in which this Court determined that the 2005 Amendment applies retroactively even to contract-based debts that preceded its enactment. Although, unlike the creditor in *Hayward*, Hertel reduced the debt to a perfected judgment lien prior to the 2005 Amendment, the bankruptcy court concluded that this made no difference. In its view, the amendment immediately increased the exemption to $50,000 as to all creditors and all obligations, regardless of whether the creditor had reduced the debt to judgment prior to its enactment. *In re Calloway*, 423 B.R. at 629. As to Hertel's Takings Clause challenge, the bankruptcy court concluded that there had been no taking of Hertel's property because, under New York law, judgment liens are not vested property interests. *Id.* at 629–30 (citing *Watson v. N.Y. Cent. R.R. Co.*, 47 N.Y. 157 (1872)). The district court (Skretny, C.J.) affirmed on

substantially the same grounds, adding that even were a judgment lien a property interest protected by the Takings Clause, the 2005 Amendment's effect on Hertel's lien did not constitute a taking. *1256 Hertel Ave. Assocs., LLC v. Calloway*, No. 10-CV-250S, slip op. at 8–9 (W.D.N.Y. Mar. 16, 2012).

On appeal to this Court, Hertel reiterates its arguments that (1) the 2005 Amendment should be interpreted to apply only to judgment liens perfected after its enactment; and (2) if the 2005 Amendment does apply to pre-enactment judgmenent liens, the result is an unconstitutional taking of its property in violation of the Fifth Amendment. For the reasons set forth below, we affirm the order of the district court.[1]

## DISCUSSION[2]

New York has provided a homestead exemption for more than 150 years. *See* 1850 N.Y. Laws ch. 260. The exemption "protect[s] a homeowner against

---

[1] In light of this case's significance, we appointed Joshua D. Liston as pro bono counsel to represent Calloway's interest in the appeal. We thank counsel for his efforts.

[2] "An order of a district court functioning in its capacity as an appellate court in a bankruptcy case is subject to plenary review." *Momentum Mfg. Corp. v. Emp. Creditors Comm. (*In re *Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994). This Court "independently review[s] the factual determinations and legal conclusions of the bankruptcy court." *Id.* (internal quotation marks omitted). Its legal conclusions are evaluated de novo, and its factual findings are reviewed for clear error. *Id.* The issues Hertel raises in this appeal are pure questions of law subject to this Court's de novo review.

seizure of his or her dwelling to satisfy a money judgment," *Gen. Elec. Capital Bus. Asset Funding Corp. v. Hakakian*, 300 A.D.2d 486, 487 (2d Dep't 2002), and reflects a long-standing legislative decision to "provide an honest debtor with a fresh start" and avoid "leaving the debtor and his family homeless and on the brink of financial ruin," *Westinghouse Credit Corp. v. Cent. Trust Co. Rochester, N.Y., (*In re *Leonardo)*, 11 B.R. 453, 455 (Bankr. W.D.N.Y. 1981); *accord Robinson v. Wiley*, 15 N.Y. 489, 494 (1857) (opinion of Johnson, J.).

Consistent with the statute's purpose, New York's Legislature has amended the homestead exemption from time to time to ensure that its protections keep pace with homeowners' changing needs. The exemption was amended in 1977, for example, to protect "condominium apartments," 1977 N.Y. Laws ch. 181, and again in 1980 to add "mobile home[s]" to the list of protectable homesteads, 1980 N.Y. Laws ch. 717. To account for rising home values, the Legislature has also periodically increased the exemption limit—from $1,000 to $2,000 in 1969; to $10,000 in 1977; to $50,000 in 2005; and to $75,000 (with upward adjustments for high-property-value counties) in 2010.[3] *See* 1969 N.Y. Laws ch. 961; 1977 N.Y. Laws ch. 181; 2005 N.Y. Laws ch. 623; 2010 N.Y. Laws ch. 568.

---

[3] On January 31, 2013, New York State Senator Kevin S. Parker introduced a bill that would increase the exemption yet again, from $150,000 to $250,000 in ten high-property-

At issue in this case is the 2005 Amendment, which increased the homestead exemption limit from $10,000 to $50,000 and provided as follows:

> Exemption of homestead.  Property of one of the following types, not exceeding fifty thousand dollars in value above liens and encumbrances, owned and occupied as a principal residence, is exempt from application to the satisfaction of a money judgment, unless the judgment was recovered wholly for the purchase price thereof:
>
>     1.  a lot of land with a dwelling thereon,
>     2.  shares of stock in a cooperative apartment corporation,
>     3.  units of a condominium apartment, or
>     4.  a mobile home.

2005 N.Y. Laws ch. 623, § 1.  Although the 2005 Amendment included language directing that "[t]his act shall take effect immediately," 2005 N.Y. Laws ch. 623, § 2, the amendment did not specify whether its immediate effect was to protect a debtor's homestead from all obligations, even those incurred before the amendment was passed, or only obligations postdating its enactment.

This Court has once before addressed the 2005 Amendment's interaction with pre-existing obligations, in *CFCU Community Credit Union v. Hayward*, 552 F.3d 253 (2d. Cir. 2009).  In that case, CFCU held a $11,291 claim against the debtor based on a car loan secured by an automobile valued at only $7,185,

value counties.  S. 3198, 236th Leg. (N.Y. 2013).  The bill was referred to the Senate Judiciary Committee on January 8, 2014.

8

which left CFCU a general unsecured creditor for the remaining $4,106. *Hayward*, 552 F.3d at 257. CFCU argued that because the homestead exemption in effect at the time of the 2003 car loan provided only $10,000 of protection, the debtor was entitled only to that exemption and not the higher $50,000 exemption set forth in the 2005 Amendment. *Id.*

Following an analysis of the 2005 Amendment's legislative history, the *Hayward* Court concluded that "a New York debtor's ability to invoke the increased homestead exemption is determined not by the date the debtor's unsecured contract debt was incurred, but rather, by the date upon which the debtor files his or her bankruptcy petition." *Id.* at 265. Noting that retroactive interpretations are generally disfavored, the Court nonetheless applied the increased exemption to an existing obligation because the clear purpose of the legislation was to provide immediate relief to homeowners and because the Legislature had evinced its intent that the statute apply to pre-enactment liens by choosing not to carry over into the 2005 Amendment language from the prior homestead exemption that had specifically included an anti-retroactivity provision:

> In light of the legislative finding that the increased exemption amount was long overdue and that the old amount was unrealistic

9

in today's economy, it would defeat the intent of the Legislature to judicially engraft an anti-retroactivity provision (similar to that found in the 1977 Amendment) onto the statute where none exists. . . . If the Legislature intended the Amendment to be prospective only . . . it could easily have carried over the language from the 1977 Amendment.

*Id.* at 265.

## A. *Whether the 2005 Amendment Applies to Pre-enactment Judgment Liens*

Although *Hayward* clarified that the 2005 Amendment's increased homestead exemption applies even to contract-based debts that predate the amendment, the Court did not address whether the amendment applies where, prior to the amendment's enactment, a creditor has reduced a debt to judgment and perfected a judgment lien on the debtor's residential property. Because CFCU had not reduced the debt to a judgment, the *Hayward* Court had no reason to reach the issue. *See id.* at 262 n.9, 264–65 n.12.

This case places the issue squarely before us. Hertel obtained a judgment against Calloway and secured a judgment lien against her home in July 2003, when the homestead exemption limit still stood at $10,000. We must therefore determine whether, when Calloway filed for bankruptcy on May 12, 2009, she was entitled to the full $50,000 homestead protection of the 2005 Amendment even as to a debt reduced to judgment prior to the statute's enactment. Hertel

argues that the statute should be interpreted not to apply to judgment liens obtained prior to the 2005 Amendment (1) because interpretations that retroactively affect vested interests are generally disfavored; and (2) to avoid the constitutional question of whether the legislation's effect on pre-existing judgment liens constitutes an unconstitutional taking of its property in violation of the Fifth Amendment.

"It is a fundamental canon of statutory construction that retroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it."[4] *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 584 (1998). However, it is also "fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature." *Id.* at 583 (internal quotation

---

[4] A statute can be retroactive in two ways, both of which courts have traditionally disfavored because they impair an individual's ability to plan his conduct with reasonable certainty of its legal consequences. First, and most obviously, a statute is said to be retroactive if it is directed at past events and gives pre-enactment conduct a different effect from that it would have had before the passage of the statute. Second, a statute is also said to be retroactive if, although it is not directed at conduct that occurred prior to its enactment, it diminishes rights or increases obligations established prior to the legislation's effective date. *See* N.Y. Stat. Law § 51 (defining a retroactive statute as one that "takes away or impairs vested rights" or "looks backward affecting acts occurring or rights accruing before it came into force"); *see generally Landgraf v. USI Film Prods.*, 511 U.S. 244, 263–80 (1994). As interpreted by the bankruptcy and district courts, the 2005 Amendment would be retroactive in this second sense because, although it applies to the satisfaction of judgments only after its effective date, it affects judgment liens perfected prior to its enactment.

marks omitted).  The presumption against retroactivity and other principles of construction "are merely navigational tools to discern legislative intent."  *Id.* at 584.  "[M]axims of statutory construction provide helpful guideposts, [but] the reach of [a] statute ultimately becomes a matter of judgment made upon review of the legislative goal." *Duell v. Condon*, 84 N.Y.2d 773, 783 (1995).  Where a statute is unclear as to its retroactive effect, factors relevant to the retroactivity analysis include "whether the Legislature has made a specific pronouncement about retroactive effect or conveyed a sense of urgency; whether the statute was designed to rewrite an unintended judicial interpretation; and whether the enactment itself reaffirms a legislative judgment about what the law in question should be." *In re Gleason (Michael Vee, Ltd.)*, 96 N.Y.2d 117, 122 (2001).

Although the Legislature made no specific pronouncement as to the 2005 Amendment's effect on pre-enactment debts, the statute's legislative history reflects a clear sense of urgency that the homestead exemption limit be immediately adjusted to bring it in line with modern home values.  The memoranda submitted by the 2005 Amendment's sponsors in the Senate and Assembly noted that the $10,000 exemption limit had not been updated since 1977 and was "not at all realistic in today's economy."  N.Y. Spons. Memo., 2005

12

S.B. S4582; N.Y. Spons. Memo., 2005 A.B. A8479.  The memoranda further explained that "hav[ing] the figure so low is tantamount to having no exemption at all" and proposed a $50,000 exemption as "a much more realistic figure." *Id.*

To provide immediate relief to debtors whose homesteads were underprotected by the outdated exemption limit, the 2005 Amendment explicitly provided that "[t]his act shall take effect immediately." 2005 N.Y. Laws ch. 623, § 2.  The statute's directive that it take effect immediately is not itself enough to require retroactive application, but it does evince a sense of urgency on the part of the Legislature that the benefit of the increased homestead exemption be available to debtors as soon as possible.  *See Majewski*, 91 N.Y.2d at 583.  The 2005 Amendment's specification that it take effect "immediately" is particularly striking given that the effective date of statute it replaced, the 1977 Amendment, had been intentionally crafted to avoid any effect on pre-enactment debts. Section 2 of the 1977 Amendment provided that "[t]his act shall take effect ninety days after it shall have become a law, *but shall not affect the application of property to the satisfaction of a money judgment for a debt contracted before it takes effect*."  1977 N.Y. Laws ch. 181, § 2 (emphasis added).  The Legislature chose not to carry over

13

the anti-retroactivity provision of the 1977 Amendment to the 2005 Amendment and instead replaced it with an instruction that the statute have immediate effect.

*Hayward* relied on these indicia of legislative purpose to conclude that a debtor may invoke the 2005 Amendment's increased homestead exemption even as to pre-enactment unsecured contract-based debts. Nothing in the legislative history suggests that the Legislature intended a different rule to apply where the creditor has reduced the debt to a judgment and obtained a judgment lien. In fact, the statute's legislative history post-*Hayward* further evinces the Legislature's intent to apply the 2005 Amendment to pre-enactment judgment liens. As noted above, in 2010 the Legislature increased the homestead exemption limit to $75,000 (or higher for certain high-property-value counties). 2010 N.Y. Law ch. 568. The 2010 Amendment provided that "[t]his act shall take effect on the thirtieth day [Jan. 21, 2011] after it shall become a law and shall apply to the *satisfaction* of judgments on or after such date." § 7 (emphasis added). By expressly stating the amendment would apply to the satisfaction of judgments on or after its effective date, the Legislature made clear that the increased exemption limits would apply to *judgments* obtained *prior* to the

14

effective date, since a party necessarily must have a judgment before seeking to satisfy it.

The fact that the Legislature, presumably aware of *Hayward* and alerted to the retroactivity question, *Arbegast v. Bd. of Educ. of S. New Berlin Cent. Sch.*, 65 N.Y.2d 161, 169 (1985), resolved any lingering ambiguity as to the homestead exemption's retroactive effect by expressly applying the 2010 Amendment to pre-enactment judgments supports our conclusion that the 2005 Amendment is best read as making the increased homestead exemption available to all debtors who file for bankruptcy after the statute's effective date, regardless of the date on which the debt was incurred or reduced to judgment or the date on which any judgment lien was perfected.

Anticipating our reaffirmation of *Hayward*, Hertel argues that even if the 2005 Amendment is most naturally read to apply to pre-enactment obligations, the canon of constitutional doubt requires the Court to adopt a different interpretation as to judgment lien debts to avoid the question of whether the 2005 Amendment has effected a taking of its property in violation of the Fifth Amendment. Under the federal and New York State canons of constitutional

15

doubt,[5] "[a] statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score." *Tauza v. Susquehana Coal Co.*, 220 N.Y. 259, 267 (1917) (Cardozo, J.), *and Almendarez-Torres v. United States*, 523 U.S. 224, 237 (1998) (both quoting *United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916) (Holmes, J.)); *accord In re Jacob*, 86 N.Y.2d 651, 667 (1995); *see also* N.Y. Stat. Law § 150. The constitutional-doubt canon is justified partly by a presumption that legislatures are cognizant and respectful of constitutional limitations and partly by a judicial policy of

---

[5] In the absence of a final decision by a state's highest court as to the proper interpretation of a state statute, a federal court must determine how the state's highest court would decide the issue if presented with it. 19 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4507 (2d ed. 1996). This Court has not previously addressed whether that predictive inquiry should be guided primarily by federal or state interpretive principles, in this case, the federal or New York State constitutional avoidance canon. The *Erie* doctrine would seem to require federal courts to interpret a state's law just as would the courts of that state in order to ensure consistent outcomes in federal and state courts. *See generally* Abbe R. Gluck, *Intersystemic Statutory Interpretation: Methodology as "Law" and the* Erie *Doctrine*, 120 Yale L.J. 1898 (2011). And in past cases we have naturally relied on state courts' statutory construction case law. *See, e.g., Beason v. United Techs. Corp.*, 337 F.3d 271, 275 (2d Cir. 2003) (relying on Connecticut precedent on statutory construction to interpret Connecticut statute). Other of our decisions, however, suggest that federal and state courts apply distinct interpretive methodologies by virtue of a "broader interpretive power" that state courts exercise in interpreting state law and that those approaches could sometimes result in different interpretations of identical statutory language in state versus federal courts. *See, e.g., Sealed v. Sealed*, 332 F.3d 51, 59 (2d Cir. 2003). We note this issue but need not resolve it, because both New York and the federal courts recognize the constitutional avoidance canon, and, whichever governs, the result is the same.

minimizing confrontations between the legislative and judicial branches. *See Almendarez-Torres*, 523 U.S. at 238.  Application of the canon requires that the statute in question be genuinely susceptible to at least two interpretations and that there be a serious likelihood that the statute will be held unconstitutional absent application of the canon.

These conditions are not met in this case.  Even assuming that the 2005 Amendment is susceptible to two plausible interpretations, there is no serious likelihood that interpreting the statute to apply to Hertel's pre-enactment judgment lien will result in the statute being held unconstitutional.  For the reasons discussed above, the statute is best interpreted as applying the increased exemption limit even to pre-enactment judgment liens, and, although that interpretation requires the Court to address a constitutional question, the Takings Clause issue that Hertel raises does not lead us to doubt the statute's constitutionality.

## B.    *Takings Clause*

Hertel argues that if the 2005 Amendment is read to apply to its pre-enactment judgment lien, the statute effects an unconstitutional taking of its judgment lien in violation of the Fifth Amendment.  The Takings Clause

17

provides that no "private property [shall] be taken for public use, without just compensation." U.S. Const. amend. V. The clause applies to the states through the Fourteenth Amendment. *Kelo v. City of New London, Conn.*, 545 U.S. 469, 472 n.1 (2005).

**1.      Whether a Judgment Lien is a Protected Property Interest**

Before addressing Hertel's Takings Clause challenge, we must first address the threshold question of whether Hertel even held a protected property interest in its judgment lien. If Hertel held no property interest, the 2005 Amendment can have taken none from it.

This Court has never previously addressed whether a judgment lien against a judgment debtor's real property constitutes a property interest protected by the Fifth Amendment. The bankruptcy court below, following the decisions of other bankruptcy courts in this Circuit, concluded that under New York law a judgment lien against a debtor's real property is not a constitutionally protected property interest. *See In re Calloway*, 423 B.R. 627, 629–30 (Bankr. W.D.N.Y. 2010).

In an 1872 decision, *Watson v. New York Central Railroad Co.*, 47 N.Y. 157 (1872), the New York Court of Appeals addressed whether a judgment

18

lienholder was entitled to be a party to, and receive compensation from, a property seizure initiated by a railroad company pursuant to a state statute delegating to the railroad limited eminent domain power to secure its right-of-way should it be unable to obtain the land it required by private contract. The Court of Appeals understood the statute to give a right to compensation only to property holders and reasoned that because a lienholder's rights are created by statute, the lienholder holds no property interest in the land underlying the lien, and its statutory rights can be superseded at will by the Legislature. *Id.* at 162. *Watson* is an old case, but its holding has never been repudiated by New York's Court of Appeals. Finding no more recent decision to the contrary, a number of bankruptcy courts in this Circuit have relied on *Watson* in recent years to reject Takings Clause challenges to the homestead exemption on the ground that New York law does not recognize judgment liens as protected property interests. *See In re Calloway*, 423 B.R. at 629–30; *see also In re Trudell*, 381 B.R. 441, 442–44 (Bankr. W.D.N.Y. 2008); *Lattimore v. Walt's Tree Serv., Inc. (*In re *Lattimore*), 12 B.R. 111 (Bankr. W.D.N.Y. 1981).

The crucial question in this case, however, is not whether Hertel's judgment lien is categorized as a property interest by New York law, but

whether it constitutes a property interest for purposes of the Fifth and

Fourteenth Amendments. "That determination, despite its state-law

underpinnings, is ultimately one of federal constitutional law. Although the

underlying substantive interest is created by an independent source such as state

law, *federal constitutional law* determines whether that interest rises to the level of

a legitimate claim of entitlement protected by the Due Process Clause." *Town of

Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756–57 (2005) (internal quotation marks

omitted). Accordingly, we look first to state law to define the contours of the

purported property interest, and then to federal constitutional law to determine

whether that interest merits constitutional protection as a property interest.

Under New York law, after a plaintiff has won a judgment against a

defendant, obtaining a judgment lien against his real property is simple. The

judgment creditor need only file the judgment with the county clerk of the

county where the property is located.[6] N.Y. C.P.L.R. § 5018(a). The lien secures

the judgment creditor's ability to collect the judgment, by forced sale of the

property if need be, N.Y. C.P.L.R. § 5236, by ensuring that, apart from a few

---

[6] The process is simpler still if the judgment is rendered by a supreme or county court and the debtor's property is located in the county where the judgment is entered. A judgment entered in a supreme or county court *automatically* becomes a judgment lien against the debtor's local real property. *See* N.Y. C.P.L.R. § 5018(a); David D. Siegel, *New York Practice* § 517 (5th ed. 2011).

statutory exceptions, no transfer by the judgment debtor of any interest in the liened property is effective against the judgment creditor.  N.Y. C.P.L.R. § 5203.

In *Ford Motor Credit Co. v. NYC Police Department* this Court held that a lienholder with a security interest in a motor vehicle seized by the New York City Police Department possesses a constitutionally protected property interest in the seized vehicle and may not be excluded from participation in the civil forfeiture process.  503 F.3d 186, 190–92 (2d Cir. 2007).  The Court relied in part on *Armstrong v. United States*, in which the Supreme Court similarly concluded that a mechanic's lien obtained pursuant to Maine law constituted a constitutionally protected property interest.  364 U.S. 40, 44–45 (1960).  Like the mechanic's lien at issue in *Armstrong*, a judgment lien entitles the lienholder to force a sale of the liened property and to obtain payment in priority over other creditors.  *See* N.Y. C.P.L.R. § 5236(a); *see also* N.Y. C.P.L.R. § 5235 prac. cmt. C5235:1 (McKinney 2014) (explaining that N.Y. C.P.L.R. § 5236(a) "ordinarily bars sale of the realty on execution if the judgment is not . . . a lien").  And like other common property interests, a judgment lien can be freely bought, sold, and assigned.  There is no reason that a judgment lien should not be entitled to similar protection.  The legal rights of a judgment lienholder are obviously far

21

fewer than those of an owner in fee simple, but a judgment lien, like other

security interests, "is indisputably a property interest protected by the

Fourteenth Amendment." *Ford Motor Credit Co.*, 503 F.3d at 191.

## 2. Regulatory Taking Analysis

The Supreme Court has recognized two branches of Takings Clause cases:

physical takings and regulatory takings.[7]  *See Tahoe-Sierra Pres. Council, Inc. v.*

*Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002).  A physical taking occurs

when there is either a condemnation or a physical appropriation of property.  *Id.*

A regulatory taking, by contrast, occurs where even absent a direct physical

appropriation, governmental regulation of private property "goes too far" and is

[7] Citing the Supreme Court's observation in *United States v. Security Industrial Bank*, 459 U.S. 70, 75–76 (1982) that the traditional regulatory takings framework employed in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978), fits awkwardly with governmental regulations, like this one, that affect a party's entire property interest rather than "some but not all of the 'bundle or rights,'" Hertel urges recognition of a new branch of Takings Clause doctrine to assess the destruction of liens.  This we decline to do.  In only two cases has the Supreme Court held that the government's destruction of a lien constituted a taking, *see Armstrong v. United States*, 364 U.S. 40 (1960); *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935), both of which predated *Penn Central Transportation*, the Supreme Court's seminal case on regulatory takings.  *Penn Central Transportation*, however, cited *Armstrong* as an example of a case in which a regulatory taking occurred given the government's frustration of property-holders' investment-backed expectations, *see* 438 U.S. at 127, one of the principal considerations when considering whether a regulatory taking occurred.  Thus, it is far from clear that the Supreme Court would analyze the government's destruction of liens using a framework other than the regulatory takings frameworks set forth in *Penn Central Transportation* and *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992), both of which we address herein.

22

"tantamount to a direct appropriation or ouster." *Lingle v. Chevron U.S.A. Inc.*,

544 U.S. 528, 537 (2005) (quoting *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)

(Holmes, J.)).  Because application of the 2005 Amendment to pre-existing liens

"does not present the 'classi[c] taking' in which the government directly

appropriates private property for its own use," *E. Enters. v. Apfel*, 524 U.S. 498,

522 (1998) (alteration in original), any taking in this case would be regulatory in

nature.

The Supreme Court has "generally eschewed any set formula" for

identifying regulatory takings, instead "preferring to engage in essentially ad

hoc, factual inquiries" to determine in each case whether the challenged property

restriction rises to the level of a taking.  *Lucas v. S.C. Coastal Council*, 505 U.S.

1003, 1015 (1992) (alterations omitted) (internal quotation marks omitted).

Paramount to the inquiry are the familiar factors set forth in *Penn Central*

*Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978).  "Primary among

those factors are '[t]he economic impact of the regulation on the claimant and,

particularly, the extent to which the regulation has interfered with distinct

investment-backed expectations.'"  *Lingle*, 544 U.S. at 538–39 (alteration in

original) (quoting *Penn Central*, 438 U.S. at 124).  Also telling, is the "character of

23

the governmental action," particularly "whether it amounts to a physical invasion" or appropriation of property or instead merely affects property interests through "some public program adjusting the benefits and burdens of economic life to promote the common good." *Id.* at 539 (internal quotation marks omitted).

Although these factors govern most regulatory takings challenges, the Supreme Court has also identified two types of regulatory action that are treated as per se takings for Fifth Amendment purposes and therefore require no case-specific weighing of the *Penn Central* factors. A categorical taking occurs (1) where a regulation "compel[s] the property owner to suffer a physical 'invasion' of his property"; or (2) "where regulation denies all economically beneficial or productive use of land." *Lucas*, 505 U.S. at 1015.

Hertel argues that this case falls into the second of these two per se takings categories. It reasons that the 2005 Amendment has deprived it of all economic use of its judgment lien against Calloway and that the Court should simply find a per se taking under *Lucas* and forgo a detailed analysis of the *Penn Central* factors. In the alternative, Hertel argues that even were we to apply *Penn Central*, those factors would weigh in favor of its takings claim.

The cases in which the Supreme Court has applied *Lucas*'s total takings rule have involved real property, and it is unclear whether that case's per se rule should be applied to purported takings of other types of property, such as intellectual property, personal property, or a security interest like that at issue here. The *Lucas* Court repeatedly referred to regulation that deprives "*land*" (not "property") of all economically beneficial use,[8] and subsequent decisions of the circuit courts have not reached a clear consensus on how broadly to apply *Lucas*'s per se rule. *See A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1151–52 (Fed. Cir. 2014) (noting the question and collecting cases). The parties have not briefed the issue, however, and its resolution is unnecessary to our decision because there has been no taking under either standard. Because Hertel's takings claim fails for similar reasons under both tests, *Lucas* and the *Penn Central* factors can be addressed together.

First, the nature of the challenged governmental action in this case is not that of a regulatory taking. The government has not physically invaded or appropriated Hertel's judgment lien for its own use; it has merely adjusted its

[8] The *Lucas* Court also specifically distinguished regulation of land from regulation of personal property, which, it explained, might even face regulation that would render it economically worthless "by reason of the State's traditionally high degree of control over commercial dealings." *Lucas*, 505 U.S. at 1027–28.

long-standing statutory protection of debtors' homesteads to account for modern home values. Legislative tinkering of this sort inevitably creates individual winners and losers, for one man's defense is another's obstacle. But "it cannot be said that the Taking Clause is violated whenever legislation requires one person to use his or her assets for the benefit of another." *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 223 (1986). The 2005 Amendment's interference with judgment lienholders' property rights is of the sort that inevitably follows when the Legislature adjusts the benefits and burdens of economic life to promote the common good.

Second, the economic impact of the 2005 Amendment and its effects on Hertel's investment-backed expectations establish that no taking occurred here. Hertel obtained a judgment lien on Calloway's property in 2003. At the time of the bankruptcy court proceeding, the property was valued at approximately $110,000, but was encumbered by a mortgage with a remaining balance of approximately $85,000, leaving Calloway around $25,000 in home equity. If the 2005 Amendment had never been enacted and the homestead exemption limit had been left at $10,000, a portion of Calloway's home equity would now be available to satisfy Hertel's judgment against her. However, because the 2005

26

Amendment raised the homestead exemption limit to $50,000, Calloway's equity in her home is completely shielded.[9] Hertel reasons as follows: But for the 2005 Amendment, Calloway's home equity would be available to satisfy the judgment; a comparison of Hertel's economic position before and after the statute's effective date shows a change for the worse; therefore Hertel's property has been taken in violation of the Fifth Amendment.

Hertel's reasoning, however, rests on the factually unsupported assumption that its judgment lien had value before the passage of the 2005 Amendment. The record contains no evidence as to Calloway's equity in her home on August 29, 2005, the day before the amendment took effect. If on that date she held $10,000 or less in home equity, Hertel's judgment lien would have been worthless, since Calloway could have protected all of her home equity under the then-applicable $10,000 exemption. Hertel therefore has not shown the 2005 Amendment, in fact, affected its economic interests.

---

[9] 11 U.S.C. § 522(f) allows a debtor to avoid a judgment lien in bankruptcy to the extent that the lien impairs an exemption to which the debtor would be entitled in the absence of the lien. Because the $25,000 equity that Calloway holds in her home is less than the $50,000 homestead exemption, subjecting the property to a judicial lien of any amount would impair the value of that exemption. *See* 11 U.S.C. § 522(f)(2)(A). Section 522(f) thus entitles Calloway to completely avoid the lien and prevents any portion of the lien from passing through the bankruptcy and remaining on her property.

In any event, however, even assuming the 2005 Amendment did have some effect on Hertel's economic interests, that alone is not enough to support its claim. In assessing a takings claim, the relevant question is not whether governmental action has affected a party's interests in some way but, rather, the extent to which the challenged governmental action has upset the claimant's investment-backed economic expectations by altering its rights as to a constitutionally protected property interest.

To argue that the 2005 Amendment impermissibly affected its property interest, Hertel relies primarily on *United States v. Security Industrial Bank*, 459 U.S. 70 (1982). That case considered the retroactive application of lien-avoidance provisions contained in the then newly enacted Bankruptcy Reform Act of 1978, 92 Stat. 2549 (1978). Federal bankruptcy law had remained largely unchanged since the Depression-era Chandler Act, ch. 575, 52 Stat. 840 (1938), and, by the 1970s, Congress recognized the need for major reform. Consumer bankruptcies had come to account for nearly ninety percent of all bankruptcy cases, 123 Cong. Rec. 35444 (1977) (statement of Rep. Rodino), but the federal bankruptcy laws had not been readjusted since 1938 and were aimed primarily at business bankruptcies. H.R. Rep. No. 95-595 at 3–5 (1977), *reprinted in* 1978 U.S.C.C.A.N.

28

5963, 5965–66.  The Bankruptcy Reform Act of 1978 radically readjusted U.S. bankruptcy law by "redesign[ing] traditional bankruptcy protections to make them more effective for non-business debtors." 123 Cong. Rec. 35444 (1977) (statement of Rep. Rodino).

One particular concern of the Act was creditors' increasing use of liens on personal property.  The traditional right under state law to exempt certain property from the bankruptcy estate did not protect debtors from creditors who had forced them into contracts waiving the exemptions or who held security interests in their household goods, apparel, and similar personal property.  *See* H.R. Doc. No. 93-137, at 169–74 (1973); 123 Cong. Rec. 35446 (1977) (statement of Rep. Edwards).  Congress addressed these problems with the Bankruptcy Reform Act of 1978, which, among other things, made waivers of exemptions unenforceable and included a lien-avoidance provision entitling individual debtors to avoid judicial liens and nonpossessory, nonpurchase-money liens on certain types of property.  Faced with the question whether Congress's dramatic alteration of bankruptcy law to permit debtors for the first time to avoid even secured debts should apply retroactively to existing liens, the Supreme Court in *Security Industrial Bank* noted "substantial doubt whether the retroactive

29

destruction of the appellees' liens . . . [would] comport[] with the Fifth Amendment," 459 U.S. at 78, and ultimately concluded that Congress must not have intended § 522(f) to apply to existing liens.

Unlike the newly crafted lien-avoidance provision at issue in *Security Industrial Bank*, however, New York's homestead exemption is of a much earlier vintage—from a time if not quite immemorial, then at least nearly so. Hertel obtained its judgment lien against a backdrop of New York law that has continuously provided a homestead exemption for more than 150 years. Dating from 1850, New York's homestead exemption has now become a "background principle[] of the State's law of property," *Lucas*, 505 U.S. at 1029, that serves both to define the scope of a judgment lienholder's property interest and its reasonable investment-backed expectations.[10] So pedigreed a principle of state

---

[10] Neither *Lucas* nor subsequent decisions have clarified how long a legislative enactment must remain in force before it becomes a "background principle" of property law that is sufficiently embedded in a state's legal tradition that it defines property holders' rights and investment-backed expectations. A background principle cannot be a "newly legislated" one, but it is unclear just how old is old enough. *Lucas*, 505 U.S. at 1028–29; *accord Palazzolo v. Rhode Island*, 533 U.S. 606, 630 (2001). Although we do not here attempt to delineate a precise division between "background" and "foreground" laws, after more than 150 years, New York's homestead exemption qualifies as part of "those common, shared understandings of permissible limitations derived from a State's legal tradition." *Palazzolo*, 533 U.S. 606, 630 (2001); *accord Tahoe-Sierra*, 535 U.S. at 352–53 (Rehnquist, C.J., dissenting) (relying on New York City's enactment of a comprehensive zoning ordinance in 1916 and the existence of zoning regulations in

law "inhere[s] in the title itself," and the property owner can claim no taking when he feels the effects of that restriction, for the implied limitation has been there all along. *Lucas*, 505 U.S. at 1029.

When Hertel obtained its judgment lien in 2003, inherent in the property interest was the implied limitation that collection on the judgment might be impeded by New York's long-standing protection of judgment debtors' homesteads. Like New York's other exemption laws, the homestead exemption has changed to keep pace with the times. The exemption for "[a]ll spinning-wheels [and] weaving-looms" has come to encompass instead "one sewing machine with its appurtenances." The exemption for "[t]he family bible, family pictures and school books" now includes all "religious texts" and caps the exemption for other books at $500 instead of $50. And the homestead exemption has been expanded to include condominiums, has become available to women, and now has been updated to provide an exemption limit commensurate with ever-increasing home values. *Compare* 2 Revised Statutes of New York, pt. III, ch. VI, tit. 5, art. 2, § 22 (1st ed. 1829), *and* 1850 N.Y. Laws ch. 260, *with* N.Y. C.P.L.R. 5205, *and* N.Y. C.P.L.R. 5206.

---

colonial Boston to conclude that zoning law is an implied limitation on real property and part of an owner's investment-backed expectations).

Inherent in Hertel's judgment lien was the implied limitation of a homestead exemption that predictably and necessarily must be adjusted from time to time to account for the changing values of the homes it protects. This limitation having been part of Hertel's judgment lien from the start, the 2005 Amendment neither effected a total taking of Hertel's property nor upset its reasonable investment-backed expectations. Thus, we conclude that the 2005 Amendment's application to pre-enactment judgment liens does not violate the Takings Clause of the Fifth Amendment.

**CONCLUSION**

In sum, we hold (1) that the 2005 Amendment applies to all creditors and all obligations, including pre-existing obligations, regardless of whether the debt was reduced to a judgment lien prior to the statute's enactment; and (2) that retroactive application of the exemption does not constitute an uncompensated taking of pre-enactment judgment liens in violation of the Takings Clause. Accordingly, the judgment of the district court is AFFIRMED.